# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### AT LEXINGTON

| | |
|---|---|
| **WANDA MCINTOSH,** | **CIVIL ACTION NO. 5:13-307-KKC** |
| Plaintiff, | |
| V. | **OPINION AND ORDER** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

The plaintiff, Wanda McIntosh, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Wanda McIntosh filed her claim for benefits on February 24, 2011, alleging a disability beginning October 28, 2010. Her claims were initially denied on June 9, 2011, and upon reconsideration on August 9, 2011. McIntosh then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued an unfavorable opinion on July 6, 2012. (AR 10).

At the time of the alleged onset of disability, McIntosh was 46 years old with a high school education. In her disability report filed to obtain benefits, she claims to be disabled due to a degenerating disc in her back, bipolar disorder, attention deficit hyperactivity

disorder, arthritis, a bulging disc in her back, high blood pressure, nervousness, anxiety, hearing problems, and memory loss. (AR 192).

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id*.

The burden of proof is on the claimant through the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without finding that the claimant is not disabled, then the burden

shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in substantial gainful activity since October 28, 2010, the alleged onset date. (AR 15). At step two, the ALJ determined that McIntosh suffers from the following severe impairments: chronic low back pain secondary to degenerative disc disease of the lumbar spine with a disc protrusion at the L5/S1 level; a history of polysubstance abuse, allegedly in remission; facet arthropathy of the thoracic and lumbar spines; an anxiety disorder with post traumatic stress disorder features; a mild hearing loss; and borderline intellectual functioning. (AR 16). In the third step, the ALJ found that McIntosh does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 16–17).

At step four, the ALJ found that based on consideration of the entire record, McIntosh "has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she cannot climb ropes, ladders or scaffolds; can only occasionally climb ramps and stairs; cannot work in excessively noisy environments or where acute hearing is required for safety or job performance; cannot be exposed to concentrated vibration or industrial hazards; can occasionally stoop, kneel, crouch and crawl; requires entry level work with simple repetitive procedures; cannot deal with frequent changes in work routines; and should work in an object oriented environment with

3

only occasional and casual contact with coworkers, supervisors or the general public." (AR 17). In making this finding, the ALJ determined that the claimant's subjective complaints regarding the severity and limiting effect of her symptoms is not credible to the extent that they contradict his RFC finding. (AR 18). The ALJ then determined that McIntosh has no relevant past work experience because she has not worked at the substantial gainful activity level within the past fifteen years.

Because the claimant has no past relevant work, the ALJ continued to step five to determine if there are jobs that exist in significant numbers in the national economy that McIntosh can perform with her residual functional capacity. At this step, the ALJ determined that McIntosh could perform the work of a light commercial cleaner, laundry worker, production laborer/hand packer, production laborer, general clerk, and inspector/sorter. (AR 20). These jobs exist in significant numbers in the national economy. The ALJ's conclusion was based on consideration of the claimant's age, education, work experience, and residual functional capacity, as well as the testimony of the vocation expert. (AR 19–20).

The Appeals Commission subsequently denied McIntosh's request for review on August 12, 2013. McIntosh has exhausted her administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made by proper

legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## ANALYSIS

McIntosh raises four arguments as to how the ALJ committed error in evaluating her claim for benefits. First, McIntosh argues that the ALJ erred when he did not account for her alleged severe impairments of dizziness, headaches, or neck pain. Second, she argues that the ALJ failed to give adequate explanations and evidence to discredit the agency's examining physician's medical opinion. Third, she argues that the ALJ erred by failing to adopt all the limitations described by Dr. Grubbs despite giving great weight to his opinion. And finally, she argues that the ALJ erred by basing his decision on Dr. Grubbs' report when he did not have an opportunity to review the entire record. All four of these arguments lack merit.

### 1. The ALJ's Determination of McIntosh's Impairments is Supported by Substantial Evidence

The ALJ did not err in assessing McIntosh's alleged impairments. As an initial matter, it is immaterial that the ALJ did not consider McIntosh's dizziness, headaches, and neck

pain to be severe impairments. An ALJ's finding that an impairment is not severe at step two is not reversible error if the ALJ finds the claimant has at least one other severe impairment. *See Maziarz v. Sec'y of Health and Humans Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found that McIntosh had several severe impairments and moved on to step three. The fact that he did not find her dizziness, headaches, or neck pain to be severe impairments is harmless, even if it was in error. The issue, then, is whether the ALJ erred in failing to discuss these three physical ailments in his assessment of the claimant's RFC, even to the extent that they are non-severe impairments.

An ALJ must consider all of a claimant's impairments, including those that are not severe. 20 C.F.R. §§ 404.1520(e); 404.1545. Further, the ALJ must consider the cumulative effects of the claimant's impairments. *Id.* Here, the ALJ determined McIntosh's RFC by "consider[ing] all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AR 17).

The problem for McIntosh is she does not appear to have alleged or provided evidence supporting impairments related to dizziness, headaches, or neck pain. First, McIntosh did not assert in her disability report that she suffered from any of these three impairments. (AR 192). She listed ten different physical and mental conditions that limit her ability to work, none of which were headaches, dizziness, or neck pain. (*Id.*). Moreover, McIntosh does not cite to *any* medical evidence suggesting that she suffers from functional limitations because of these alleged impairments. While she points to some subjective testimony regarding her limitations, the ALJ made a specific finding that her testimony was not credible. (AR 17–18). She acknowledged in her testimony that she is not being treated for neck pain and that her migraines are manageable when she takes over-the-counter

6

medication. Further, she provides no evidence to suggest her dizziness is related to an impairment and causes functional limitations.

In sum, McIntosh failed to allege specific impairments related to dizziness, headaches, and lower back pain. She now points the Court to only subjective evidence regarding any functional limitations allegedly due to these symptoms, but the ALJ found such subjective claims incredible. The ALJ's determination regarding her residual functional capacity is supported by the substantial evidence, and his failure to specifically address headaches, dizziness, and neck pain in his decision was not in error. *See Burlew v. Astrue*, Civ. A. No. 2008-234, 2009 WL 197543, at *5 (E.D. Ky. Jan. 26, 2009) (finding that the ALJ did not err in failing to consider an impairment when the claimant did not allege it in his disability report and there was no evidence in the record establishing that the claimant suffered from a functional limitation due to that impairment).

## 2. ALJ's Decision to Give Dr. Atcher's Opinion Little Weight Is Supported by Substantial Evidence

Medical opinions of non-treating sources do not enjoy a deferential status. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). The weight afforded to Dr. Atcher is therefore based on several factors, including the treatment relationship with the claimant, whether the opinion is supported by medical evidence, and whether the opinion is consistent with the overall treatment record. The ALJ reviewed the findings of Dr. David Atcher, M.D., and Leigh Ann Ford, Phd, and determined that they are not entitled to great weight for three reasons: they are inconsistent with the fact that McIntosh had been living with her boyfriend for the past three years; they did not mention her drug problems; and because McIntosh is not seeking mental health care treatment at this time. These findings are supported by the substantial evidence.

McIntosh argues that the ALJ erred in failing to give Dr. Atcher's medical opinion great weight because he did so based off findings not in the record. This claim is partially true. The ALJ found that Dr. Atcher's finding of disability was based on statements made to him by the claimant that were not credible. Specifically, the ALJ noted that McIntosh informed Dr. Atcher "that she could not stand to be around men for many years, could not stand to be touched by men and was upset when someone came up behind her." (AR 18). These statements are inconsistent with the fact that McIntosh lived with her boyfriend for several years before he passed away in October 2011. (AR 558). But Dr. Atcher's report never states that McIntosh could not stand to be touched by men and was upset when someone came up behind her. Instead, his report states that she "avoids being alone with men, hates the smell of 'Old Spice' aftershave and is bothered by how much one [son] looks like his dad, her abuser." (AR 507).

The ALJ likely confused Dr. Atcher's report with Ford's. In Ford's report, she notes that McIntosh explained that "she can't stand for people to be behind her or touch her." (AR 536). Thus, when evaluating Dr. Atcher's findings, the ALJ mistakenly relied in part on the statements the claimant made to Ford.

Regardless, this error is not fatal. The ALJ gave three primary reasons for rejecting both Atcher and Ford's reports. The first is that the findings were based on statements made by McIntosh that are incredible. Even if the statements regarding being touched by men and having people standing behind her are stricken, Dr. Atcher's report still explains that McIntosh made a similar statement to him that she "avoids being alone with men." (DE 507). This statement is just as inconsistent with the fact that she had a live-in boyfriend as the way in which the ALJ characterized it. McIntosh cannot credibly maintain

8

she avoids being alone with men when her other treatment notes indicate she had a boyfriend with whom she lived.[1]

Moreover, the ALJ gave two other reasons for rejecting Dr. Atcher's findings, both of which are supported by substantial evidence. Dr. Atcher's report clearly states that she denied past or present drug problems, when treatment notes from Dr. John Gilbert, MD, indicate the opposite is true. (AR 453). The ALJ noted that other evidence indicates drug problems, including two treatment notes stating that she was discharged from the Red River Clinic because she failed a drug test. (AR 527, 562). Finally, the ALJ relied on the fact that McIntosh is not seeking mental health treatment right now, which casts doubts on complaints of disabling symptoms. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). For all of these reasons, the Court finds that the ALJ's determination not to give Dr. Atcher's report great weight is supported by substantial evidence.

The claimant also mentions, in passing, the report given by Ford, but makes no arguments as to why the ALJ's decision regarding her opinion was in error. As explained above, the arguments McIntosh makes with regard to Dr. Atcher would not apply to Ford, as the statements McIntosh objects to were found in Ford's report. Because the ALJ applied the same analysis to both Atcher's and Ford's report, the reasons discussed above apply equally to Ford's. Moreover, without any specific arguments regarding the ALJ's evaluation of Ford's opinion, this Court will not "formulate arguments on [McIntosh's] behalf, or [ ] undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's

---

[1] Dr. Atcher's report was dated May 10, 2011, and therefore took place only a few months *prior* to McIntosh's live-in boyfriend passing away.

decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006). The Court therefore finds that the ALJ's assessment of Ford's report is supported by substantial evidence.

### 3. The ALJ Did Not Give Great Weight to Dr. Grubbs' Opinion and Did Not Err in Rejecting Some of its Limitations

McIntosh contends that the ALJ erred because he gave great weight to the opinion of psychological consultant George Grubbs, but then chose to reject some of the limitations Grubbs recommended. More specifically, McIntosh contends that the ALJ's hypothetical given to the vocational expert was inaccurate because it did not take into account all of the limitations provided for by Grubbs. This argument has no merit.

Grubbs is a state agency consultant and state agency consultants are experts in disability evaluation whose opinions may provide substantial evidence to support a finding of no disability. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e)(2). The ALJ reviewed the medical opinion of Grubbs and determined that it was "generally accurate" subject to some exceptions. McIntosh focuses on three specific limitations that she alleges the ALJ failed to account for, which are moderate limitations in the ability to (1) complete a normal workday and workweek without interruptions from psychologically based symptoms; (2) maintain attention and concentration for extended periods of time; and (3) set realistic goals or make plans independently of others. Because the ALJ did not specifically state these limitations in describing the hypothetical for the vocational expert, McIntosh contends that his reliance on the expert's testimony was error.

McIntosh's argument has two errors. First, the ALJ's description of McIntosh's residual functional capacity is consistent with Grubbs' opinion with regard to the three limitations

McIntosh focuses on. Although McIntosh correctly identifies moderate limitations described by Grubbs, those limitations were clarified in a way that makes them consistent with the ALJ's finding of McIntosh's residual functional capacity. Specifically, Grubbs found that McIntosh "can sustain concentration, effort, and pace for simple tasks requiring little independent judgment and involving minimal variations, and doing so at requisite schedules of work and breaks." (AR 70). Grubbs additionally found that McIntosh, although moderately limited in her ability to set realistic goals or make plans independently of others, could "[a]dapt adequately to situational conditions and changes with reasonable support and structure." (AR 71). In other words, although Grubbs noted the moderate limitations discussed above, his findings specifically state she is able to complete a workday and a workweek with appropriate breaks, and that she can work in an environment requiring her to sustain concentration and effort for simple tasks that requires the exercise of little independent judgment. This is consistent with the ALJ's assessment.

But even if the ALJ did not account for the appropriate limitations, McIntosh is incorrect in her assertion that the ALJ gave Grubbs' assessment "great weight." McIntosh relies on *Ealy v. Comm'r*, 594 F.3d 504 (6th Cir. 2010) to argue that it was error for the ALJ to give Grubbs' opinion great weight and then not adopt all of his limitations. But the ALJ did not give Grubbs' opinion great weight. He found it "generally accurate" subject to some exceptions. An ALG is "not required to recite the medical opinion of a physician verbatim in his RFC." *Poe v. Comm'r of Soc. Sec.*, No. 08-5912, 2009 WL 2514058, at *7 (6th Cir. Aug. 18, 2009). There was no legal error here.

### 4. The ALJ Did Not Err in Evaluating Grubbs' Opinion

McIntosh's last argument is that the ALJ erred in evaluating the opinion of Dr. Grubbs because Grubbs did not have access to the complete record when he gave his medical

11

opinion. It is not error for an ALJ to rely on a state agency opinion just because it is out of date and might not account for changes in a claimant's condition. *See McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009) (finding no error where when it was "clear from the ALJ's decision [ ] that he considered" the relevant medical evidence). The rationale here is that even if the state agency physician did not review the complete medical record, the ALJ did and could properly consider it in context. *Id*. Here, McIntosh's argument is diminished even more, because she objects on the basis that Grubbs did not see Dr. Ford's assessment, but the ALJ explicitly referred to (and discounted) Dr. Ford's opinion. Thus, although Grubbs might not have seen the opinion, the ALJ did, and it was therefore not error to rely in part on Grubbs' assessment.

* * *

For the reasons stated above, **IT IS ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 11) is **DENIED**;

2. The defendant's motion for summary judgment (DE 12) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment will be entered contemporaneously with this order.

Dated this 19th day of August, 2014.



KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY